**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000687
30-MAY-2012
08:50 AM**

NO. CAAP-11-0000687

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

IN THE INTEREST OF N.G.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 08-01-1643)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Appellant Mother (**Mother**) appeals from the Order Terminating Parental Rights, filed on August 31, 2011 in the Family Court of the First Circuit (**Family Court**).[1]

On appeal, Mother contends that the Family Court erred by determining that the Petitioner-Appellee, State of Hawai‘i, Department of Human Services (**DHS**), made reasonable efforts to reunify her child, N.G., with Mother because DHS did not provide appropriate services and the assistance of a Marshallese interpreter prior to terminating her parental rights.  Mother argues that DHS should not have withdrawn its requirement that Mother undergo a psychological evaluation since it was "necessary to address mental health concerns, parenting ability, and the most effective way Mother can integrate and learn information so that DHS can provide better services[.]"

---

[1]  The Honorable Bode A. Uale presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

Mother's claim that DHS's withdrawal of the requirement of a psychological evaluation of Mother demonstrates that a reasonable effort to reunify her with N.G. was not made cannot be sustained in this case. The only pertinent evidence presented to the Family Court supported the determination that a psychological evaluation of Mother through an interpreter would not be helpful. The psychological evaluation requirement was eliminated based upon the examiner's opinion that Mother did not understand English and "[p]sychological evaluation through interpreters are of questionable validity and testing norms are often not available for other cultural groups." It was recommended that "more appropriate information on their parenting skills, knowledge, and perceptions could be secured by service providers such as therapist, visitation supervisors, etc., who have more ongoing contact with these clients." Thereafter, the service plan required that Mother's individual therapist, Dr. Welch, obtain the same or similar types of information to assess Mother.

Importantly, Mother agreed to DHS's request to eliminate the requirement of a psychological evaluation and use an individual therapist in the service plan during a hearing on March 24, 2009. Mother again agreed to the modified service plan that did not include a psychological evaluation during a hearing on February 10, 2010. Mother also provided no argument or support for the proposition that a psychological evaluation performed through the use of interpreters would provide valid and useful information concerning Mother's mental health and parenting abilities.

DHS made reasonable efforts to provide an interpreter for Mother's services. DHS stated that it does not employ

interpreters. Rather, it makes referrals to service providers and it is the responsibility of the service provider to arrange for an interpreter to be present at each meeting. After Mother requested, and the Family Court ordered, that an interpreter be available for services, Mother cites an example of when an interpreter was not present for two therapy sessions. However, in a Safe Family Home Report dated September 13, 2009, DHS stated that it "made a referral to Dr. Welch but mother has stalled it till this day, and has not started her individual therapy sessions. Mother puts the blame on the translator and the translator blames [Mother]'s lack of cooperation to facilitate scheduling." Mother also does not claim any harm or prejudice resulted from a lack of an interpreter for two therapy sessions.

Mother eventually requested that an interpreter be present while she visited with N.G. because the child was learning English and could not understand her. The Family Court then ordered that an interpreter be provided during visits with N.G. Mother cites no instances where there was no interpreter provided during visitation.

Mother cites several instances in which there was no interpreter available for a court hearing. In each instance where Mother did not waive the presence of an interpreter, the hearing was continued. Mother does not argue that any harm or prejudice resulted from the continuance of the hearings.

The Family Court's unchallenged findings of fact and conclusions of law clearly support its determination that it is not reasonably foreseeable that Mother will become willing and able to provide N.G. with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

Therefore, it is hereby ordered that the Order Terminating Parental Rights, filed on August 31, 2011, in the Family Court of the First Circuit Court, is affirmed.

DATED:  Honolulu, Hawai'i, May 30, 2012.

On the briefs:

Leslie C. Maharaj
for Mother-Appellant
CECILLA ASHER fka
CECILLA BENJAMIN

Gay M. Tanaka
Mary Anne Magnier
Deputy Attorneys General
for Petitioner-Appellee
DEPARTMENT OF HUMAN SERVICES

Chief Judge

Associate Judge

Associate Judge